**David Jay Glassman, Esq.**
**Law Offices of David Jay Glassman, Esq.**
**Attorney for Kevin Roper**
**N.J. Attorney I.D. 021461980**
**Five Greentree Centre, Suite 104**
**525 Route 73 North Marlton, NJ 08053**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRACY MORGAN, ARDLEY FUQUA, JR. JEFFREY MILLEA and KRISTA MILLEA<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC. and WAL-MART TRANSPORTATION, LLC<br><br>Defendants. | MOTION TO INTERVENE<br><br>Docket No. 3:14-cv-04388-MAS-LHG |

**REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE**
**FOR PURPOSE OF REQUESTING STAY OF DISCOVERY**
**TO PROTECT CONSTITUTIONAL RIGHTS OF KEVIN ROPER**

# COVER PAGE

**DATE RETURNABLE: DECEMBER 15, 2014**

**ORAL ARGUMENT REQUESTED**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| TRACY MORGAN, ARDLEY FUQUA, JR. JEFFREY MILLEA and KRISTA MILLEA<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC. and WAL-MART TRANSPORTATION, LLC<br><br>Defendants. | MOTION TO INTERVENE<br><br>Docket No. 3:14-cv-04388-MAS-LHG |
|---|---|

## TABLE OF CONTENTS

A. A Stay of Discovery Should be Granted to Protect the Constitutional Rights of Kevin Roper........................................................ 1

1. The Overlap Between Allegations Against Kevin Roper in Plaintiffs' Complain and the Criminal Proceeding.................................... 3

2. The Criminal Proceeding................................................... 5

3. Claims of Financial Hardship by Tracy Morgan, et al..................... 6

4. The Burden Upon Kevin Roper by Permitting Discovery to Continue... 7

5. Interest of the Court........................................................ 10

6. Weighing the Public Interest.............................................. 11

B. Kevin Roper Should be Permitted to Intervene to Protect His Constitutional Rights........................................................ 12

1. Roper Should be Permitted to Intervene as of Right 12

2. Kevin Roper's Constitutional Rights are Important Enough that He Should be Granted Permission to Intervene................................ 15

C. Conclusion.................................................................... 16

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRACY MORGAN, ARDLEY FUQUA, JR. JEFFREY MILLEA and KRISTA MILLEA<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC. and WAL-MART TRANSPORTATION, LLC<br><br>Defendants. | MOTION TO INTERVENE<br><br>Docket No. 3:14-cv-04388-MAS-LHG |

## TABLE OF AUTHORITIES

Gold v. Johns-Mansvile Sales Corp., 723 F. 2d 1068 (3d. Cir. 1983). 1

In re Herlsey Indus. Secs. Litig., 2007 U.S. Dist. Lexis 27201(E.D. Pa. 2007) 4

Colombo v. Bd. Of Educ. 2011 U.S. Dist. Lexis 127771, (D.N.J. 2011) 4

Cress v. City of Ventnor, 2009 U.S. Dist. Lexis 22172 (D.N.J. 2009) 4

Castellani v. City of Atl. City, 2014 U.S. Dist. Lexis 5077 (D.N.J. 2014) 4

Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd. 7 F. Supp. 2d 523 (D. N.J. 1998) 5

United States v. Kordel, 391 U.S. 1 (U.S. 1970) 8

SEC v. Dresser Industries, 628 F.2d 1368 (D.C. Cir. 1980) 8

Campbell v. Eastland, F.2d 478 (5th Cir. 1962) 8

Bridgeport Harbour Place, I, LLC v. Ganim, 269 F. Supp. 2d 6 (D. Conn. 2002) 8

See De Vita v. Sills, 422 F.2d 1172 (3d. Cir. 1970) 8

Corbin v. FDIC, 74 F.R.D. 147 (S.D.N.Y. 1977) 9

Volmar Distributors, Inc. v. The New York Post, 152 F.R.D. 36 (S.D.N.Y. 1993) 9

Forrest v. Corzine, 757 F. Supp. 2d 473 (D.N.J. 2010) 9

See SEC v. Downe, 1993 U.S. Dist. Lexis 753 (S.D.N.Y. 1993) 10

Texaco, Inc. v. Borda, 383 F. 2d 608 (3d. Cir. 1967) 10

United States v. Mellon Bank, N.A., 545 F.2d 869 (3d. Cir. 1976) 10

Maloney v. Gordon, 328 f. Supp. 2d 508 (D. Del. 2004) 11

Javier H. v. Garcia Botello, 218 F.R.D. 72 (W.D.N.Y. 2003) 11

Benjamin v. DPW, Pennsylvania, 701 F. 3d 938 (3d Cir. 2012) 13

Brody v. Spang, 957 F.2d 1108 (3d Cir. 1992) 13

Mountain Top Condo. Ass'n v. Dave Stabbert, 72 F.3d. 361 (3d. Cir. 1995) 14

Sierra Club v. Glickman, 82 F.3d 106 (5th Cir. 1996) 14

Gannett Co. v. DePasquale, 443 U.S. 368 (U.S. 1979) 14

Marshall v. United States, 360 U.S. 310 (U.S. 1959) 14

NCAA v. Christie, Case No. 3:12-cv-04947-MAS-LHG (D.N.J., 2012) 16

Pansy v. Borough of Stroudsburg, 23 F. 3d 771 (3d Cir. 1994) 16

**David Jay Glassman, Esq.**
**Law Offices of David Jay Glassman, Esq.**
**Attorney for Kevin Roper**
**N.J. Attorney I.D. 021461980**
**Five Greentree Centre, Suite 104**
**525 Route 73 North Marlton, NJ 08053**

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRACY MORGAN, ARDLEY FUQUA, JR. JEFFREY MILLEA and KRISTA MILLEA<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC. and WAL-MART TRANSPORTATION, LLC<br><br>Defendants. | MOTION TO INTERVENE<br><br>Docket No. 3:14-cv-04388-MAS-LHG |

**REPLY BRIEF IN SUPPORT OF MOTION TO INTERVENE FOR PURPOSE OF REQUESTING STAY OF DISCOVERY TO PROTECT CONSTITUTIONAL RIGHTS OF KEVIN ROPER**

**A. A Stay of Discovery Should be Granted to Protect the Constitutional Rights of Kevin Roper**

Kevin Roper has been criminally charged with two crimes and if convicted, he could be incarcerated for up to 30 years in prison. Plaintiffs claim that before a stay may be issued, Roper must establish "a clear case of hardship or inequity." See Plaintiff's Opposition to Kevin Roper's Motion to Intervene, ECF Doc No. 18 at p. 3, citing Gold v. Johns-Mansvile Sales Corp., 723 F. 2d 1068, 1075-1076 (3d. Cir. 1983).

Any alleged harm (delay of receipt of money) that could result to Plaintiffs pales in comparison to loss of one's liberty. If being sent to prison is not a "clear case of hardship or inequity", I do not know what is. Thus, the equities weigh substantially in favor of granting the stay to protect the rights of Mr. Roper.

Roper respectfully points out that Plaintiffs' argument regarding the harm that will be done to Plaintiffs or the public by the granting of a stay of discovery is greatly exaggerated. For one, relying upon the very public statements of Plaintiffs' counsel, the extent of alleged damages to the Plaintiffs cannot yet be determined in full. Therefore a stay of discovery would seem completely reasonable since, without a complete account of damages, Plaintiffs would not be capable of establishing a necessary element of their case relating to damages.

Secondly, if the public was placed at any substantial risk by a stay, common sense would dictate that the Federal agency charged with ensuring the safety of American roadways would have released findings of fact and conclusions of law recommending that immediate action be taken to correct any danger to the public. Instead, the NTSB has released a preliminary report absent any immediate recommendations. See Preliminary Report of NTSB, attached hereto as Exhibit "A."

The claims of attempts by Wal-Mart to gain an "unfair" advantage are not directed to Kevin Roper. To the extent that such claims are ploys by Plaintiffs' counsel to continue to damage or destroy the constitutional protections awarded fellow American, Kevin Roper, by publicly, and without foundation, alleging some type of conspiracy between Wal-Mart and Mr. Roper to delay these proceedings, the claims do not rise to

the dignity that ought to be expected of an officer of this Court who has sworn to uphold the Constitution, or of this Honorable Court itself.[1] Therefore, they should be disregarded in their entirety.

### 1. <u>The Overlap Between Allegations Against Kevin Roper in Plaintiffs' Complaint and the Criminal Proceeding</u>

Plaintiffs acknowledge that there is overlap between the criminal and civil proceedings. As they must, Plaintiff's also acknowledge that the criminal and civil proceedings arise out of the same motor vehicle accident. For the extent to which the civil and criminal matters so clearly overlap, one need only examine Plaintiff's Complaint, which contains more damaging and descriptive allegations against Kevin Roper than those that were apparently considered by the Middlesex County Prosecutor's Office. (*Compare,* Plaintiffs' Complaint at ¶¶ 1, 9, 12, 13, 14, 15, 16, 17, 38, 39, 40, 47, 49, 56,

---

[1] The failure of Plaintiffs to provide foundation for these bald assertions is "conspicuous" indeed. However, these assertions constitute a continuous onslaught of statements by Plaintiff's counsel that serve no other purpose than to taint the criminal process against Mr. Roper and incite the public through mass media.

Moreover, this does not appear to be Plaintiffs' counsel's first run-in with ethical concerns. See, http://theblot.com/breaking-news-tracy-morgan-lawyer-benedict-morelli-never-graduated-law-school-7726628.

To that end, I sent to Plaintiffs' counsel correspondence on November 22, 2014, attached hereto as Exhibit "B." It respectfully provided guidance to Plaintiffs' counsel as to their obligations under the Rules of Professional Conduct both of the State of New Jersey and the Local Rules of this Honorable Court. Specifically, Plaintiffs' Counsel was encouraged to desist from making extra judicial statements that Plaintiffs' counsel is aware or should be aware have a substantial likelihood of causing material prejudice to the rights of Mr. Roper.

Attached hereto as Exhibit "C" is a list of the statements in the unlikely chance that this Honorable Court has not had occasion to read or hear the very public and damaging extra judicial statements themselves. Notwithstanding this request, on Thursday, November 4, 2014, a story was featured on "Good Morning America" and was followed by any number of media articles published that day.

58, 68, 69, 70, 71, and 79; *with,* Criminal Complaints against Kevin Roper).[2] Courts have determined that the criminal and civil matters overlap to a significant enough degree in less obvious scenarios. See, e.g., In re Herlsey Indus. Secs. Litig., 2007 U.S. Dist. Lexis 27201(E.D. Pa. 2007)(charges of wire fraud, obstruction of federal audit, and false statements); Colombo v. Bd. Of Educ. For the Clifton Sch. Dist., 2011 U.S. Dist. Lexis 127771, at *4-5 (D.N.J. 2011)(criminal charges of lewdness, sexual offenses and coercion overlapped with civil equal protection, first amendment and due process claims); Cress v. City of Ventnor, 2009 U.S. Dist. Lexis 22172 at *3-4 (D.N.J. 2009)(finding sufficient overlap between criminal charges of resisting arrest against Plaintiff and civil claims of U.S. Constitutional violations of search and seizure; cruel and unusual punishment; and due process); Castellani v. City of Atl. City, 2014 U.S. Dist. Lexis 5077 at *1-3 (D.N.J. 2014)(overlap between criminal charges of disorderly conduct, aggravated assault, resisting arrest and assault of a police animal; and civil claims of U.S. Constitutional violations of search and seizure; cruel and unusual punishment; and due process).

---

[2] In their attempts to distract from the black letter legal issues, Plaintiffs claim that Roper has used a different standard by which the Court should grant a stay of discovery in this matter. What Plaintiffs completely disregard is that Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd., which includes the factors by which this Court may grant a stay to Kevin Roper, is cited on p. 8 of Roper's Motion; an interesting method of proceeding "conspicuously."

For purposes of this Reply, Roper will examine the equities as stated by the Walsh Court to exhibit the extent to which the equities clearly favor the grant of a stay of discovery, as was the case in Walsh. See also In re Herlsey Indus. Secs. Litig., 2007 U.S. Dist. Lexis 27201 at *7-8, n.1 (discussion of process by which court should consider factors cited in Roper's Motion after an analysis of the overlap between civil and criminal matters).

Plaintiffs' claims regarding the general practices of the Wal-Mart corporate defendants do nothing to distinguish the factual scenario presently before this Court, which Plaintiffs could not and would not have brought, but for the specific allegations against Kevin Roper, individually. In reviewing Plaintiff's Complaint, it is plain that the civil and criminal proceedings could not overlap more completely, and thus this overlap favors the grant of a stay.

**2. The Criminal Proceeding**

The criminal charges against Kevin Roper are pending presentment to the Grand Jury. The Middlesex County Prosecutor's Office has advised that this is imminent.

Plaintiffs do not deny that Roper brings this request to the Court in a timely manner. See ECF Doc. No. 18 at p. 18 ("It is not disputed that Mr. Roper's Motion to Intervene is timely.") Rather, Plaintiffs argue that Mr. Roper's request is brought before this Court *too early*.[3]

Nevertheless, while courts have discussed the distinctions between pre-indictment requests, they have refused to rely solely upon the stage of the criminal proceedings for a basis by which to deny the request for a stay of discovery. See, e.g. Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd. 7 F. Supp. 2d 523 (D. N.J. 1998) Further, while for obvious reasons the potential for harm to Mr. Roper is greatest while trial is to shortly ensue, this does not diminish the probable harm to Mr. Roper at the current stage of the proceedings and the stages soon to follow.

[3] One must wonder that if Roper brought his request to this Court at a later point in time, if Plaintiffs would no doubt be apt to argue prejudicial delay.

In fact, Plaintiff's repeated citation to Walsh Securities is misleading for the proposition that a stay should not be granted at this stage of the criminal proceedings given that the Court in Walsh Securities determined a stay of discovery was proper despite that the criminal proceedings had not yet progressed to an indictment. See, Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd. 7 F. Supp. 2d 526.

Moreover, the Walsh Securities Court highlighted that the 5th Amendment rights of the criminal defendants were not the Court's only apprehension. Rather, **the Court noted the danger of the possibility of revealing criminal defense strategy as a chief concern**. Id. (Emphasis added). Therefore, even the cases to which the Plaintiffs cite in their brief show that as applied to the factual scenario before this Court, the stage of the proceeding greatly weighs toward the grant of the stay.

### 3. Claims of Financial Hardship by Tracy Morgan, et al.

Similar to Plaintiffs' attempts to distract this Court and the public from the legal arguments regarding the presumed innocent Kevin Roper, it is placed before this Court to decide the extent to which Plaintiffs' claims of prejudice, including financial hardship, appear equally disingenuous. Relying upon information widely available, at the time of the accident, Plaintiffs were being driven by hired livery, while Kevin Roper was driving a truck that he was hired to do for a living.

Plaintiffs use adversarial language such as "perverse" to suggest that a delay in civil discovery to protect the constitutional rights of Kevin Roper would amount to "slower justice." See ECF Doc. 18 at p. 8. As cases cited to by Plaintiffs indicate, "[t]he mere fact that additional time will pass does not establish prejudice to the Plaintiff[s]."

Colombo v. Bd. Of Educ., for the Clifton Scho. Dist., 2011 U.S. Dist. Lexis 127771, at 8. To establish prejudice, the plaintiff must show a unique injury. Id.

Roper submits that when compared to the injustice that would attach if the constitutional rights cited in Roper's Motion were denied, including the right to a fair trial, the "slower justice" complained of by Plaintiffs is really no injustice at all. To the extent to which Plaintiffs claim that Roper improperly and "suspiciously" requests that a complete stay of discovery should be put in place, one need only point out that in the vast majority of the cases cited to by Plaintiffs, a similar request was made, exhibiting the common nature of such request. Plaintiffs cannot show any type of unique injury or unfair advantage that would be gained, and therefore they are not prejudiced to the point that would prevent this Court from granting a stay of discovery. Id.

Lastly, the information repeatedly released by Plaintiffs to the media notes that Mr. Morgan and the other Plaintiffs are still recovering, which seems to infer that the case is not yet ripe for a determination of damages to be made while this takes place.

**4. The Burden Upon Kevin Roper by Permitting Discovery to Continue**

As noted by the Walsh Securities Court, the burden on the criminal defendant when there are allegations made against him in both a civil and criminal matter, does not solely, or even primarily, arise from the concern over the Defendant's 5th Amendment right against self-incrimination. Rather, there is a reasonable concern that the criminal defense strategy may be provided to the prosecution prior to the criminal trial. Walsh Securities, Inc. v. Cristo Prop. Mgmt., Ltd. 7 F. Supp. 2d 526. This is not to make light of the substantial 5th Amendment concerns. As noted by the United States Supreme Court in

United States v. Kordel, where one cannot respond to discovery without a real and appreciable risk of self-incrimination, the appropriate remedy is to postpone discovery until the termination of the criminal action. United States v. Kordel, 391 U.S. 1, 8 (U.S. 1970).

However, other Courts have noted additional fundamental concerns. In SEC v. Dresser Industries, the court recognized that prejudice to a criminal defendant from **"adverse pretrial publicity"** would be an appropriate circumstance under which to delay civil discovery. SEC v. Dresser Industries, 628 F.2d 1368, 1374 (D.C. Cir. 1980)(emphasis added). The Court also recognized that the expansion of the rights of criminal discovery, and the exposure of the basis for the criminal defense, were proper factors to consider when granting a stay. Id. at 1375.[4] Courts must be sensitive to the differences in the rules of discovery in criminal and civil matters. Campbell v. Eastland, F.2d 478, 487 (5th Cir. 1962); Bridgeport Harbour Place, I, LLC v. Ganim, 269 F. Supp. 2d 6, 9 (D. Conn. 2002).

Plaintiffs argue and propose that an accommodation to Mr. Roper to wait until the end of the civil discovery deadline to force him to undergo a deposition will be enough. However, such accommodations were of a type flatly rejected by the Walsh Securities Court, on which Plaintiffs so heavily rely. See Walsh Securities, Inc. 7 F. Supp. At 527;

---

[4] The D.C. Circuit Court of Appeals in SEC v. Dresser Industries recognized that under certain circumstances the failure to grant a stay of discovery, such that would prejudice the rights of a citizen, may present due process concerns to the point where "courts may have a duty to take appropriate corrective action." SEC v. Dresser Industries, 628 F.2d 1368, 1375 at n. 21(D.C. Cir. 1980). The Third Circuit Court of Appeals has entertained that a criminal defendant's Sixth Amendment rights may also be at issue. See De Vita v. Sills, 422 F.2d 1172, 1179 (3d. Cir. 1970).

See also Corbin v. FDIC, 74 F.R.D. 147, 149 (S.D.N.Y. 1977)(noting the futility of prophylactic measures suggested by plaintiffs to preserve the constitutional rights of the criminal defendant). In addition, the delay of discovery directed to Roper would not prevent the prejudice to him, in having to essentially defend against allegations of wrongful acts in the civil case, or intervene to prevent or argue over the disclosure of facts or evidence, while at the same time defending against the criminal charges.

None of the cases cited to by Plaintiffs support the proposition that because Roper is not a civil defendant, his rights are not at issue. Rather, it has been the case that a complete stay of civil discovery has been granted to protect the potential prejudice to non-party criminal defendants. See, e.g., Volmar Distributors, Inc. v. The New York Post Co., Inc., 152 F.R.D. 36 (S.D.N.Y. 1993).

Plaintiffs rely on Cress v. City of Vetnor, and Castellani v. City of Atlantic City., for the proposition that because Roper is not a civil defendant, a stay should not be granted. See, ECF Doc. 18, at p.5, citing Cress v. City of Vetnor 2009 U.S. Dist. Lexis 22172 (D.N.J. 2009); Castellani v. City of Atlantic City., 2014 201955 (D.N.J. 2014). However, in both cases, the Court determined discovery in the civil cases could go forward because the plaintiff could prove his case independently of whether there were any determinations of wrongful actions on the part of the criminal defendants. Those cases can be further distinguished by the fact that the *plaintiffs* were the defendants in the criminal matter. Id. Plaintiffs' reliance upon Forrest v. Corzine, is similarly misplaced, as in that case, the Court determined that the equitable factors by which to consider whether to grant a stay did not apply because the civil defendant requesting a stay was the

government, not a criminal defendant. See, Forrest v. Corzine, 757 F. Supp. 2d 473 (D.N.J. 2010).

In the instant civil matter, Plaintiffs acknowledge that the outcome of the criminal case against Mr. Roper would have an impact on the civil proceedings. See, ECF Doc. No. 18 at 12.[5] Therefore, absent some type of showing of wrong doing on the part of Mr. Roper, it is questionable whether the Plaintiffs will be able to prove their case, thus further exhibiting the substantial overlap between the two proceedings.

Because the potential for prejudice to Mr. Roper would amount to a significant burden, the request for a stay should be granted.

**5. Interest of the Court**

Courts have acknowledged that a complete stay, as opposed to a partial stay of civil discovery is in the interest of the Court and efficiency of the case, so as to avoid the necessity of duplicative and elongated discovery and depositions. See SEC v. Downe, 1993 U.S. Dist. Lexis 753, at *50 (S.D.N.Y. 1993). There is also the likely potential that the resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case. Texaco, Inc. v. Borda, 383 F. 2d 608, 609 (3d. Cir. 1967); United States v. Mellon Bank, N.A., 545 F.2d 869, 873 (3d. Cir. 1976). The factual

[5] Plaintiffs' counsel's extra-judicial statements, referenced above and attached hereto, are particularly insidious in this regard. When combined with the acknowledgment that a verdict against Roper would have an impact in the civil case, the statements carry the appearance that they were not simply unintentionally prejudicial zealous advocacy, but strategic attempts to create an atmosphere by which Roper will be determined to be guilty before trial, thus furthering any monetary recovery by the Plaintiffs in the civil action. In this regard, Roper notes that this Court has the inherent power pursuant to Local Rule 105.1(g) to issue a special order governing such matters as extra-judicial statements by parties and witnesses likely to interfere with the rights to a fair trial by an impartial jury, and any other matters which the Court may deem appropriate.

circumstances of this case provide additional reasons to stay discovery in its entirety. The interest of Kevin Roper in his criminal defense, absent a stay of discovery, would probably necessitate litigation to prevent the hardships from prejudice to Roper should information be made available to the Prosecutor from this civil case, or the incessant media coverage, that would not otherwise be available under the New Jersey rules of criminal procedure. See Maloney v. Gordon, 328 f. Supp. 2d 508, 513 (D. Del. 2004); Javier H. v. Garcia Botello, 218 F.R.D. 72, 75 (W.D.N.Y. 2003).

Contrary to Plaintiffs' argument, any stay of discovery will not be for an indefinite period of time. The lack of a stay would provide for an inefficient use of the Parties' time as well as that of the Court. Even if this Court was to determine that inefficiencies were created by a stay, "the strong potential for an unjust result" would outweigh such interests. Walsh Securities, Inc., 7 F. Supp. 2d at 527. Therefore, the stay should be granted.

**6. Weighing the Public Interest**

The public interest factor weighs in favor of the grant of a stay. Courts have denied a stay where the civil case, brought by a *government agency*, was intended to protect the public. Id. When a stay in a civil manner would benefit the public by permitting the government to conduct a "complete, unimpeded investigation into potential criminal activity," a stay should be granted. Id.

Without attribution, citation, or foundation, Plaintiffs make a number of statements as to why a stay of civil discovery should not be granted due to the public interest in this private civil suit. See ECF Doc. No. 18, at p. 16. Despite their seemingly

honorable intentions, the Plaintiffs are not the public authority that has been charged with investigation of the facts that give rise to either the criminal or civil matter. Rather, the Middlesex County Prosecutor's Office has done so from a criminal standpoint, and the National Transportation Safety Board (NTSB) has done so, and continues to do so, from the perspective of an agency charged with safety of the public highways in this country. The outcomes of those investigations are as of yet, undetermined.[6] However, the grant of a stay of civil discovery would permit those investigations, by the public entities charged with such authority, to proceed. The outcomes and factual information determined therefrom would likely serve to narrow the issues in the civil litigation and provide for greater efficiency when discovery continues following a stay. Therefore, the public interest weighs heavily in favor of a stay of this case.

### B. Kevin Roper Should be Permitted to Intervene to Protect His Constitutional Rights

#### 1. Roper Should be Permitted to Intervene As of Right

A petitioner seeking to intervene of right must establish: (1) the application for intervention is timely; (2) the applicant has sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter, by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the

[6] It is common practice that a prosecutor's office and/or the police agency will not disclose investigatory information until its criminal case is complete. In this case, they have released the vehicles, but advised all parties and claimants that certain components from the vehicles, electronic data, materials, and information will not presently be disclosed. Thus, Plaintiffs would argue that discovery should proceed even though no one in the civil case is permitted to view the materials and evidence that the criminal authorities possess at this time.

litigation. Benjamin v. Dep't of Pub. Welfare of Pennsylvania, 701 F. 3d 938, 948 (3d Cir. 2012).

The parties do not dispute that Mr. Roper brings this Motion to Intervene to the Court in a timely fashion. Plaintiff argues that Roper has no interest that may be impacted by the outcomes in this litigation, despite that Roper's Motion to Intervene repeatedly pointed to the possible prejudice and harm that could be done to Roper's ability to maintain an adequate criminal defense of the charges against him. A party seeking to intervene as of right must show that there is a "tangible threat to a legally cognizable interest." Id. at 951. In making this determination, the court must assess "the practical consequences of the litigation," and "'may consider any significant legal effect on the applicant's interest.'" Brody v. Spang, 957 F.2d 1108, 1122 (3d Cir. 1992). Roper's interest in preventing against self-incriminating statements; the ability of the prosecution to obtain otherwise unobtainable discovery; the ability of the prosecution to learn of criminal defense strategies; and otherwise protect his right to a fair criminal trial, all exhibit the tangible threats to legally cognizable interests that Roper seeks to protect by intervention in this matter.

That the deposition testimony to be taken and discovery produced, which would then be obtainable by the prosecutor in the criminal action, is so patently capable of impacting the criminal case of Kevin Roper is obvious. Since the interests of Kevin Roper in protecting against these legally cognizable threats are so clear, it is absurd for Plaintiffs to argue, as they do, that Roper's interest is not sufficient to permit him to intervene.

Courts have been willing to permit intervention when far less severe interests are stake. See, e.g. Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc., 72 F.3d. 361 (3d. Cir. 1995)(vacation condominium owners potential entitlement to settlement funds in contract claims); Sierra Club v. Glickman, 82 F.3d 106 (5th Cir. 1996)(potential interference with contract rights by disruption of access to irrigation water in suit over endangered species). Therefore, Roper has a legally cognizable interest to protect that weighs heavily in favor of intervention.

Plaintiffs also argue that Mr. Roper's interest in this litigation is not likely to be impaired if he is not permitted to intervene. Simply stated, this is hogwash. Such an argument overlooks the interest that Roper has in preventing the prosecution from obtaining undiscoverable evidence or strategy, his right against self-incrimination, and altogether his constitutional right to a fair trial.[7] It is hard to contemplate a scenario that would be more damaging to the interests of the individual accused than to impede their ability to obtain a fair trial. See Gannett Co. v. DePasquale, 443 U.S. 368, 378 (U.S. 1979)(right to a public trial and concomitant right against prejudicial pretrial publicity); Marshall v. United States, 360 U.S. 310, (U.S. 1959)(right to have an impartial jury).

Kevin Roper is not aware of the strategies that the Wal-Mart Corporate defendants intend to employ in defense of the civil matter. Further, since Roper was not named as a

[7] As evidence of the potential for discovery outcomes to impair the rights of Kevin Roper and his ability to obtain a fair trial, one need look no further than the unsupported claims made by Plaintiffs in their most recent filing and the manner in which those claims were reported as fact in the potential jury pool for Roper's criminal trial. See NJ.com news article attached hereto as Exhibit "D." See also, Exhibit C, the series of purposefully public extra-judicial statements of Plaintiffs' counsel. Once discovery commences, the likelihood of potential prejudice to Kevin Roper's right to a fair trial will only increase.

civil defendant, he would have no other method by which to defend against evidence produced in the civil litigation, but to intervene. However, given the allegations in the Plaintiff's Complaint, many of which pertain to Kevin Roper, it would not be difficult to perceive of a scenario by which the interests of Roper and the corporate defendants would not be the same or very similar. In any event, the individual interests of Kevin Roper alleged for purpose of intervention, do not automatically attach to a corporate defendant. Thus, Roper's interests are sufficiently independent that they would not be adequately represented, absent intervention. See SEC v. Dresser Industries, Inc. 628 F.2d 1368, 1390.

Federal Rule of Civil Procedure 24(a)(2) requires that a court grant intervention as of right to any party that claims an interest relating to the subject matter of the action, and is so situated that disposing of the action may, as a practical matter impair or impede a party's ability to protect that interest, unless the existing parties adequately represent that interest. Fed. R. Civ. P. 24(a)(2). Kevin Roper has established that he has legally cognizable interests, the likes of which will be impaired if he not permitted to intervene. Therefore, Roper has demonstrated his right to intervene.

**2. Kevin Roper's Constitutional Rights are Important Enough that He Should be Granted Permission to Intervene**

This Court may grant intervention to *anyone* who has a claim or defense that shares with the main action, common questions of law or fact. Fed. R. Civ. P. 24(b)(1)(b). The decision to grant intervention is within the discretion of this Court. Brody v. Spang, 957 F.2d 1108, 1124 (3d. Cir. 1992); NCAA v. Christie, Case No. 3:12-cv-04947-MAS-

LHG (D.N.J., December 11, 2012). Factors to be considered by this Court are whether the proposed intervenors allege claims or defenses that share common questions of law or fact with the ongoing action and whether intervention "will unduly delay or prejudice the adjudication of rights of the original parties." Id.

The case of NCAA v. Christie is instructive as to the limited nature of a claim or defense that this Court has determined the intervenor must share to be sufficient to grant permissive intervention. In that case, the Court granted permissive intervention pursuant to Fed. R. Civ. P. 24(b) to the President of the Senate and Speaker of the House of the State of New Jersey to participate in a question concerning the state's ability to control gambling. The intervenors did not appear to share an interest in a claim or defense, other than by the nature of their elected positions. Surely then, under the present facts before the Court, Mr. Roper has alleged a sufficient interest to be permitted by this Court to intervene for the purpose of requesting a stay of discovery in this matter.

Mr. Roper does not seek to raise entirely new claims or defenses, and there is no indication that the purpose for which intervention is requested will delay this matter unnecessarily. There will be no last minute disruption of painstaking work by the parties or the Court, because upon information and belief, no discovery has yet commenced. See Pansy v. Borough of Stroudsburg, 23 F. 3d 771, 779 (3d Cir. 1994).

Therefore, if Kevin Roper is not granted permission to intervene as of right, pursuant to Fed. R. Civ. P. 24(a)(2), then this Court should exercise its discretion to grant permissive intervention.

## C. Conclusion

Finally, Kevin Roper notes that this matter is brought before this Court reluctantly, but sincerely, to protect the Constitutional rights of an individual who would otherwise have no distinct voice in these proceedings. Were it not for the outlandish and appalling manner in which Plaintiffs' counsel has conducted themselves, the extent to which the relief requested herein may not be necessary. As indicated in correspondence to Plaintiffs' counsel, one can appreciate efforts to self-promote, and evoke with zeal the alleged injuries of a client with hopes of increasing the settlement value of the civil matter. Nevertheless, this Court cannot change the significant damage that has already been inflicted upon the rights of Kevin Roper to a fair trial.

However, this Court has within its power the ability to prevent further harm from being done by granting Kevin Roper permission to intervene and granting a complete stay of discovery in this matter, until the criminal trial against Kevin Roper concludes.[8] Even absent the media frenzy that has been created by this case, such would be the fairness that any fellow American citizen that has been charged with a crime would be entitled to.

---

[8] To the extent that Plaintiffs claim such would amount to an indefinite stay, this argument is limited by Mr. Roper's right to a speedy trial. See, State v. Cahill, 213 N.J. 253, 61 A.3d 1278 (N.J. 2013).

Respectfully submitted,


/S/ David Jay Glassman, Esquire
David Jay Glassman, Esquire
Law Offices of David Jay Glassman, Esq.
Attorney for Kevin Roper
N.J. Attorney I.D. 021461980
Five Greentree Centre, Suite 104

Date:   12/5/14

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the within-captioned document was filed electronically with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case as follows

David T. Sirotkin, Esquire
Benedict P. Morelli, Esquire
David S. Ratner, Esquire
Morelli Alters Ratner, LLP
777 Third Avenue, 31st Floor
New York, NY 10017
*Attorney for Plaintiffs, Tracy Morgan, Ardley Fuqua, Jr., Jeffrey Millea, and Krista Millea*

*and*

Jeffrey L. O'Hara, Esquire
Laura Christine Fedyna, Esquire
LeClair Ryan
One Riverfront Plaza
1037 Raymond Blvd. 16th Fl.
Newark, NJ 07102
*Attorney for Defendants Wal-Mart Stores, Inc. and Wal-Mart Transportation, Inc.*

/S/ David Jay Glassman, Esquire
David Jay Glassman, Esquire
Law Offices of David Jay Glassman, Esq.
Attorney for Kevin Roper
N.J. Attorney I.D. 021461980
Five Greentree Centre, Suite 104
525 Route 73 North Marlton, NJ 08053

Date: 12/5/14

# EXHIBIT A

# 1. Preliminary Report: Highway Accident Investigation

**Cranbury, NJ**

**June 7, 2014**

NTSB Investigation ID: HWY14MH012

## 2. Preliminary Report

*The information in this report is preliminary and will be supplemented or corrected during the course of the investigation.*

Preliminary Report issued: June 18, 2014

On Saturday, June 7, 2014, about 12:54 a.m., eastern daylight time, a 2011 Peterbilt truck-tractor and semitrailer combination vehicle operated by Wal-Mart Transportation (Wal-Mart) was traveling north on the New Jersey Turnpike, near Cranbury, New Jersey, in the center lane of the three-lane northbound roadway. As the combination vehicle approached milepost 71.4, traffic had slowed due to construction work ahead on the turnpike. The Peterbilt combination vehicle struck the rear of a 2012 Mercedes-Benz Sprinter limo van, which was operated by Atlantic Transportation Services and occupied by a driver and six passengers. The two vehicles moved forward and were involved in secondary impacts with other vehicles that were slowed in the traffic queue. The limo van rolled over and came to rest on its left side, facing east, across the center and right lanes. As a result of the collision, one passenger in the Mercedes-Benz limo van was fatally injured and four other van occupants were transported to the hospital with injuries of various severities. Six vehicles were involved in the impacts, but none of the other 16 people occupying these vehicles were transported to the hospital.

NTSB investigators obtained information concerning the construction project. Construction contractors were performing work on a large overhead sign about 2.7 miles north of the crash location. The right and center lanes of the New Jersey Turnpike were closed in the vicinity of this construction zone. About 0.9 mile south of the crash location, an advance warning sign notified northbound traffic of the lane closure ahead. About 0.4 mile south of the crash location, speed limit signs were posted that reduced the speed from 55 mph to 45 mph.

The Peterbilt truck-tractor was equipped with an electronically controlled Cummins ISX engine. The engine control module (ECM) could record vehicle speed, engine rpm, brake circuit status, throttle percentage, and other associated data in a sudden deceleration event. NTSB investigators imaged the ECM on June 11, 2014. A preliminary review of

the data showed that the Peterbilt combination vehicle was traveling at 65 mph for the 60 seconds preceding the collision with the Mercedes-Benz limo van. NTSB investigators are correlating these data with the physical evidence.

The morning before the crash, the 35-year-old driver of the Peterbilt combination vehicle had arrived at a Wal-Mart facility in Smyrna, Delaware, and electronic driver log information showed that he went on duty at 11:22 a.m. on June 6, 2014. The log also showed that the driver made deliveries and pickups in New Jersey, Delaware, and Pennsylvania throughout the day. According to his log, about 12:20 a.m. on June 7, 2014, the driver left a Wal-Mart facility near Bristol, Pennsylvania, en route to a facility in Perth Amboy, New Jersey. The crash occurred about 30 miles after he left the Pennsylvania facility. According to electronic driver log information, the Peterbilt combination vehicle driver had logged 9 hours 37 minutes of driving time when the crash occurred. With respect to the maximum 14-hour consecutive duty period for commercial motor vehicle drivers, the driver had logged 13 hours 32 minutes at the time of the collision. NTSB investigators are comparing the log information with supporting documentation. Additionally, investigators are compiling and analyzing information to determine the activities of the Peterbilt combination vehicle driver and the amount of rest he received in the hours and days preceding the crash.

NTSB investigators documented the damage to the vehicles using 3D laser scanning technology. Three-dimensional scans of the Peterbilt combination vehicle and the Mercedes-Benz limo van are provided in figures 1 and 2 below.

# EXHIBIT B

**DAVID JAY GLASSMAN**
ATTORNEY AT LAW

FIVE GREENTREE CENTRE, SUITE 104
525 ROUTE 73 NORTH
MARLTON, NEW JERSEY 08053
(856) 596-8778
FAX (856) 817-6017

MEMBER OF NJ & PA BAR

November 22, 2014

David T. Sirotkin, Esquire
Benedict P. Morelli, Esquire
Morelli Alters Ratner, LLP
777 Third Avenue, 31st Floor
New York, NY 10017

Re: Tracy Morgan, Ardley Fuqua, Jr., Jeffrey Millea and Krista Millea
v.
Wal-Mart Stores, Inc. and Wal-Mart Transportation, LLC
Docket No. 3:14-cv-04388-MAS-LHG

Dear Counsel:

As you are aware, I represent Kevin Roper.

I am writing because over the course of the pending civil litigation there have been numerous interviews and statements made to the media by your office and yourselves, that in my opinion, attempt to insight the public which includes potential jurors, and are designed, either intentionally or unintentionally, to create an environment that is adversely affecting Mr. Roper's right to a fair trial in the pending criminal matter. I respectfully submit these statements which serve no legitimate purpose are feeding a continued media frenzy severely prejudicing Mr. Roper's Constitutional Rights and should no longer occur.

In addition to the foregoing, I submit that a number of these statements may or did violate USDC-NJ Local Rule 105.1 which tracks the language of NJ Rule of Professional Conduct 3.6 which states as follows:

"A lawyer representing a party in a civil matter triable to a jury shall not make any extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer or other person knows or reasonably should know that it will have a substantial likelihood of causing material prejudice to an adjudicated proceeding." Local Civil Rule 105.1(a). The rule further states that a statement is likely to have such an effect when it relates to "information the lawyer knows or reasonably should know is likely to be

inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudice to an impartial trial." Rule 105.1(b)(3).

Consistent with RPC 3.6, Rule 105.1 permits a lawyer to "state without elaboration: (1) the general nature of a claim or defense; (2) the information contained in the public record; (3) the scheduling or result of any step in litigation; and (4) a request for assistance in obtaining evidence and the information necessary thereto." Rule 105.1(c). The Rule is not intended to preclude the application of more restrictive rules relating to the release of information in the appropriate case, 105.1(d), and a Court may (on its own motion or that of a party) "issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of a party to a fair trial by an impartial jury, the seating and conduct in the courtroom of spectators and news media representatives . . . and any other matters which the Court may deem appropriate for inclusion in such an order." 105.1(g).

In addition, we have been collecting the vast number of statements, articles and interviews, where, in our view, the above-stated rules have been violated.

Most recently, you and/or your office released a statement to the mass media claiming that "his client is suffering significant brain damage and may never be the same" or words to that effect. This statement, along with those in the past, have been published in print, film, and internet outlets which any reasonable person would know would be viewed by a large audience of New Jersey residents.

Now I can appreciate both counsels' efforts at self-promotion and zeal in showcasing his client's injuries in the hopes of increasing the settlement value of the pending civil matter. What I do not appreciate and what the RPRs prohibit is sacrificing my client's right to a fair trial while parties engage in discovery and status conferences, the goal of which is to reach a settlement of the civil action.

As a result, I am compelled to informally raise this issue in order to protect Mr. Roper's Constitutional Rights and formally request that you immediately cease making any further statements, conducting any interviews or volunteering information to the print and broadcast media outlets.

For the reasons set forth above, prior to taking more formal action and requesting that the Court invoke its authority which may include in addition to an Order prohibiting such conduct, the imposition of sanctions and related referral to the Disciplinary Review Board and/or any other action which may be appropriate under these circumstances, I am respectfully requesting that all Counsel to the ongoing Civil litigation formally agree to conduct themselves in accordance with the aforementioned rules and as Officers of the Court.

I trust we can all agree that it is better to address and police this matter among ourselves now voluntarily rather than be forced to do so at the point of a Court Order.

I await your prompt reply.

Respectfully,

David Jay Glassman, Esquire
Attorney for Kevin Roper

DJG/gh
Transmitted via email & first class mail

cc:  Jeffrey L. O'Hara, Esquire (via email & first class mail)
     Laura Fedyna, Esquire (via email & first class mail)

# EXHIBIT C

**NEWS AND ENTERTAINMENT APPEARANCES OF BENEDICT MORELLI, ESQ.**

| Date | Comment |
|---|---|
| 8/11/14 | Benedict Morelli, Esquire appears on the Today Show for an interview |
| 8/28/14 | People Magazine interview with Benedict Morelli, Esquire (Published in September 8, 2014 issue). |
| 9/29/14 | CBS News, Benedict Morelli, Esquire calling actions by Wal-Mart "disingenuous" and indicating failure to take full responsibility. |
| 9/29/14 | New York Post, Page Six (gossip column) Benedict Morelli, Esquire: "After Walmart told the public and their customers that they would take full responsibility, they put responsibility on my clients and the deceased – which I think is despicable." "Tracy is struggling and struggling and he's sitting in a wheelchair and they're blaming him. It's disgusting." |
| 9/30/14 | Benedict Morelli, Esquire appears on Good Morning America "It's despicable, it's disgusting, and it's actually an embarrassment that they're putting in an answer like this, blaming the victims." |
| 9/30/14 | New York Daily News, Benedict Morelli, Esquire calls arguments "callous" and "disingenuous." "The driver never braked, never swerved." Morelli indicated that the police report said whether the plaintiffs were wearing their seatbelts was not an issue. [1] "They know they caused this accident." "They wan't to play hardball? I invented it. Bring it." |
| 9/30/14 | New York Post, Page Six (gossip column) "These people are despicable. They knew that they changed these people's lives forever and killed somebody." Asked if Morgan would perform again, Morelli said, "The jury's still out." "They're good blame shifters. I guess that's how they make $783 billion a year, shifting the blame." |

[1] Morelli's statements regarding the police report are considered to be particularly damaging since to date, the police report has not been released to the public.

| | |
|---|---|
| 9/30/14 | New York Times ArtsBeat, phone interview with Bendedict Morelli, Esquire: "When a tractor-trailer hits your vehicle, at dead stop, at 65 miles an hour, seatbelts have nothing to do with it." |
| 10/1/2014 | ABC News, Benedict Morelli, Esquire was "shocked" and "very upset" when a response was filed to the lawsuit. "All of my clients have had traumatic brain injuries and are all extremely injured." "It is actually an embarrassment that they are putting in an answer like this, blaming the victims. It is not appropriate." "They knew it was their fault." "It makes the families of my clients very upset." |
| 10/1/2014 | The Daily Herald, Benedict Morelli, Esquire calls actions "disgraceful," and says clients have "traumatic brain injuries." Further refers to police report. "It's a wonder that everyone wasn't killed." |
| 11/19/2014 | New York Times, Region, p. A21, Benedict Morelli, Esquire: "He suffered such a traumatic brain injury." |

# EXHIBIT D

comments

# Tracy Morgan's lawyers accuse Wal-Mart of stalling crash lawsuit

Truck driver Kevin Roper at his first appearance at the Middlesex County Courthouse on June 11, 2014. Roper is charged in the accident that injured comedian Tracy Morgan. The Star-Ledger file photo

*John O'Boyle | for NJ Advance Media (http://connect.nj.com/user/joboyle/photos.html)*

1/9 (http://thestarledger.mycapture.com/n backtext=Return%

Print (http://blog.nj.com/ledgerupdates_impact/print.html?entry=/2014/12/tracy_morgans_lawyers_accuse_wal-mart_of_stalling_crash_lawsuit.html)

(http://connect.nj.com/staff/tzambito/index.html) By Thomas Zambito | NJ Advance Media for NJ.com (http://connect.nj.com/staff/tzambito/posts.html)
Email the author | Follow on Twitter (https://twitter.com/TomZambito)
on December 02, 2014 at 2:39 PM, updated December 02, 2014 at 10:49 PM

TRENTON (http://www.nj.com/newark) — Tracy Morgan's lawyers are accusing Wal-Mart of engaging in stall tactics to prevent having to answer claims that the company's negligence contributed to the June crash on the New Jersey Turnpike that injured the "30 Rock" star and killed one of his friends.

Morgan's legal team on Monday filed papers in U.S. District Court opposing an attempt by former Wal-Mart driver Kevin Roper to delay pre-trial discovery in the comedian's civil lawsuit while criminal charges are pending against him.

Roper, 35, of Jonesboro, Ga., is not a defendant in the civil lawsuit but is facing charges of death by auto and assault by auto for allegedly causing the crash that killed comedian James McNair.

**TRACY MORGAN CRASH**

Tracy Morgan's lawyers accuse Wal-Mart of stalling crash lawsuit (http://www.nj.com/news/index.ssf/20 mart_of_stalling_crash_lawsuit.html#

Tracy Morgan still 'fighting to get better' after suffering brain injury in N.J. crash, attorney says (http://www.nj.com/news/index.ssf/20

Driver of rig that crashed into Tracy Morgan limo seeks delay in negligence suit (http://www.nj.com/middlesex/index.s

Tracy Morgan: 'I can't believe Walmart is blaming me for an

## Most Read

## Video of the Day

**N.J. Sports Now: Could Jim Harbaugh rescue Giants or Jets? (http://videos.nj.com/nj/2014**

## Get Healthy: Health & Fitness Info for N.J.

(http://www.nj.com/healthfit/index.ssf/2014/12/hhs_hospital_infe

**Hospital infections decline and lives saved, but more needs to be done, HHS says (http://www.nj.com/healthfit/index.ss report)**

HHS secretary says Obamacare is working but medical costs still need to come down (http://www.nj.com/healthfit/index.ssf/2014/12/hhs_secretary_ report)

Robert Wood Johnson named state's main Ebola treatment hospital (http://www.nj.com/healthfit/index.ssf/2014/12/robert_wood_jo report)

## Trending Videos

## Active Discussions

See more comments

Case 3:14-cv-04388-MAS-LHG Document 21 Filed 12/05/14 Page 36 of 38 PageID: 243

On June 7, 2014, McNair, Morgan and two others were returning home from a performance at a Delaware casino when their Mercedes Benz limousine was struck from behind by a Wal-Mart truck driven by Roper, prosecutors say.

accident they caused' (http://www.nj.com/entertainn

Wal-Mart: Tracy Morgan to blame for his crash injuries because he wasn't wearing a seat belt (http://www.nj.com/entertainment/inde

All Stories (http://topics.nj.com/tag/tracy-morgan-crash/posts.html) |

» (http://www.nj.com/interact/)

**Roper's lawyers filed papers last month (http://www.nj.com/middlesex/index.ssf/2014/11/driver_of_rig_that_crashed_into_tracy_morgan_limo_seeks_delay_in_ne** asking a judge to delay discovery in the lawsuit.

"The continuation of discovery and the ultimate outcome of discovery matters would impact the constitutional rights of Roper because it would be a de facto additional forum through which the criminal prosecution could obtain evidence for use in the criminal trial against Roper," attorney David Jay Glassman wrote.

But in their response Monday, Morgan's lawyers say a delay would put off measures needed to insure such an accident doesn't happen again.

They accuse Wal-Mart of not doing enough to prevent driver fatigue and failing to properly maintain collision-avoidance systems in its trucks.

"Wal-Mart's practices place drivers and passengers on America's roadways in great danger of suffering similar fates to the victims in this accident: serious injury or death," Morgan's lawyers write. "Therefore, the public has a great interest (in) discovery in this case proceeding expeditiously so that Wal-Mart's alleged trucking practices will be uncovered and hopefully made safer going forward."

Morgan's lawyers accuse Wal-Mart of prompting Roper's delay request to an "an unfair advantage" after an earlier attempt to claim it could not provide "investigative information" for the lawsuit while the National Transportation Safety Board was investigating the accident.

"Once it was clear that Wal-Mart would no longer be able to use the NTSB as a delay tactic, the instant Motion to Intervene for the Purposes of Reguesting a Stay was filed in short order," Morgan's lawyers write.

**"Wal-Mart should not be permitted to use Mr. Roper's criminal proceedings as a shield in a civil suit."**

"Wal-Mart should not be permitted to use Mr. Roper's criminal proceedings as a shield in a civil suit," they added.

In a letter sent to the court today, Wal-Mart attorney Jeffrey O'Hara said the company would not take a position on Roper's request to delay the case. "We do, however, feel compelled to correct the record," O'Hara wrote. "Plaintiff's accusation that Wal-Mart is somehow behind Mr. Roper's motion in an attempt to delay discovery is simply false."

The criminal complaint against Roper claims he had not slept for 24 hours before the early morning crash.

"Wal-Mart drivers drive over 713 million miles per year, making deliveries to 4,000 stores annually," Morgan's lawyers write. "It is believed that Wal-Mart systematically engages in unsafe trucking practices, including, but not limited to having its drivers commute unreasonable distances to work immediately before their shifts and with rest (i.e. 700-plus miles for Mr. Roper)..."

A federal judge is expected to decide the issue in the coming weeks.

*Thomas Zambito may be reached at* **tzambito@njadvancemedia.com (mailto:tzambito@njadvancemedia.com)**. *Follow him on Twitter* **@TomZambito (http://www.twitter.com/TomZambito)**. *Find* **NJ.com on Facebook (https://www.facebook.com/NJ.com)**.

## Related Stories

[Driver of rig that crashed into Tracy Morgan limo seeks delay in negligence suit](http://www.nj.com/middlesex/index.ss)

[Tracy Morgan still 'fighting to get better' after suffering brain injury in N.J. crash, attorney says](http://www.nj.com/news/index.ssf/20)

## Best of NJ.com

(http://www.nj.com/news/index.ssf/of) What happens when someone dies mid-flight? (http://www.nj.com/news/index.ssf/of)

(http://www.nj.com/passaic-county/index.ssf/2014/12/former_do of) Ex-Don Bosco football star found dead in Virginia (http://www.nj.com/passaic-county/index.ssf/2014/12/former_do of)

(http://www.nj.com/morris/index.ssf of) Former teacher admits to sex acts with student (http://www.nj.com/morris/index.ssf of)

### About Us

About NJ.com (http://www.nj.com/aboutus/)
Advertise with us (http://www.njadvancemedia.com/?utmsource=nj.com&utm_medium=link&utm_campaign=footer)
Contact Us (http://www.nj.com/contact/)
Jobs at NJ Advance Media (http://jobs.nj.com/jobs/nj-advance-media-1116067-)
Newsletters (http://update.nj.com/adv_nj/newsletters/nj/subscribe.html)
RSS feeds (http://www.nj.com/rss/)

### More on NJ.com

Interact (http://www.nj.com/interact/)
Weather (http://www.nj.com/weather/)
Blogs (http://www.nj.com/blogs/)
Premium Blogs (http://www.nj.com/blogs/premium/)
Site map (http://www.nj.com/siteindex/)
Claim your free business listing (http://businessfinder.nj.com/advertise.html)
Search (http://search.nj.com/)
Place an ad (http://www.nj.com/placead/)
Sell your car (http://www.nj.com/placead/)
Sell/rent your home (http://www.nj.com/placead/)
Post a job (http://www.nj.com/jobs/products/index.ssf)
Post a free classified ad (http://www.nj.com/classifieds/free/)
Apartments for rent (http://realestate.nj.com/for-rent)

### NJ.com Sections

N.J. News (http://www.nj.com/news/)
Local News (http://www.nj.com/local/)
N.J. Politics (http://www.nj.com/politics/)
Sports (http://www.nj.com/sports/)
High School Sports (http://highschoolsports.nj.com/)
Entertainment (http://www.nj.com/entertainment/)
Food & Recipes (http://www.nj.com/food/)
Living (http://www.nj.com/living/)
Business (http://www.nj.com/business/)
Opinion (http://www.nj.com/opinion/)
Inside Jersey (http://www.nj.com/inside-jersey)
Shore (http://www.nj.com/shore/)
Obituaries (http://www.nj.com/obituaries/)
Jobs (http://www.nj.com/jobs/)
Autos (http://autos.nj.com/)
Real Estate (http://realestate.nj.com/)
Rentals (http://realestate.nj.com/for-rent/)
Classifieds (http://classifieds.nj.com/)
Shopping Good Deals (http://findnsave.nj.com/)
Local Businesses (http://businessfinder.nj.com/)
Special Sections (http://sections.nj.com/SS/Tiles2.aspx)

### Contribute to NJ.com

Submit your photos (http://photos.nj.com/upload/)
Submit your videos (http://videos.nj.com/upload.html)
Forums (http://www.nj.com/forums/)
Register for free with NJ.com (https://signup.nj.com/register/)
Submit an event (http://www.nj.com/myevent/)

### Follow Us

### Newspaper stories and photos

The Star-Ledger (http://www.nj.com/starledger/) | Subscribe (http://ads.advance.net/RealMedia/ads/click_lx.ads/www.nj.com/////P
The Times of Trenton (http://www.nj.com/times/) | Subscribe (http://w
The Jersey Journal (http://www.nj.com/jjournal/) | Subscribe (http://w
South Jersey Times (http://www.nj.com/southjerseytimes/) | Subscrib
Hunterdon County Democrat (http://www.nj.com/hunterdon-county-d (http://www.nj.com/democratsubscribe/)
Cranford Chronicle (http://www.nj.com/cranford/) | Subscribe (http://w
Star Gazette (http://www.nj.com/warren/) | Subscribe (http://www.nj.c
The Messenger-Gazette (http://www.nj.com/messenger-gazette/)
The Warren Reporter (http://www.nj.com/warrenreporter/)
Independent Press (http://www.nj.com/independentpress/)
Suburban News (http://www.nj.com/suburbannews/)
Learn more about our newspapers (http://www.nj.com/newspapers/)

### Mobile

iPhone, Android apps (http://www.nj.com/mobile-device/) | Tablet apps (http://www.nj.com/mobile-device/)

Twitter (https://twitter.com/njdotcom) |

Facebook (http://www.facebook.com/NJ.com)

Google+ (https://plus.google.com/u/0/b/103270407631392618549/103270407631392618549/posts)

| foursquare (https://foursquare.com/njdotcom)



(http://www.advancedigital.com/)

Registration on or use of this site constitutes acceptance of our User Agreement (http://www.nj.com/useragreement/) and Privacy Policy (http://www.nj.com/privacypolicy/)

© 2014 New Jersey On-Line LLC. All rights reserved (About Us (http://www.nj.com/aboutus/)).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of New Jersey On-Line LLC.

Community Rules (http://www.nj.com/forums/index.ssf?rules.html) apply to all content you upload or otherwise submit to this site. Contact interactivity management. (http://www.nj.com/contactus/interactivity.ssf)

▷ Ad Choices (http://www.advance.net/advancedigitalUserAgreementPP/#opt_out)