David Jay Glassman, Esq.
Law Offices of David Jay Glassman, Esq.
Attorney for Kevin Roper
N.J. Attorney I.D. 021461980
Five Greentree Centre, Suite 104
525 Route 73 North
Marlton, NJ 08053

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRACY MORGAN, ARDLEY FUQUA, JR. JEFFREY MILLEA And KRISTA MILLEA | Docket No. 3:14-cv-04388-MAS-LHG |
| Plaintiffs, | |
| v. | |
| WAL-MART STORES, INC. and WAL-MART TRANSPORTATION, LLC | |
| Defendants. | |

_____

## NON-PARTY, KEVIN ROPER'S, REPLY TO PLAINTIFFS' OPPOSITION TO APPEAL OF MAGISTRATE'S ORDER

AND NOW, comes Kevin Roper, by and through his attorney, David J. Glassman, Esquire, and files this Reply to the Plaintiff's Opposition (Doc. 40) to Roper's Appeal of the Magistrate's Order dated February 3, 2015 (Doc. 36), and states as follows:

### I.     INTRODUCTION

In accordance with Local Rule 72.1(c)(1)(A), Roper files this Reply to the Plaintiffs' Opposition to Roper's pending appeal. Rather than raise any independent rebuttal to Roper's appeal, most of the Plaintiffs' opposition is simply a summary of what the Magistrate found in her February 3, 2015 Order. Thus, much of the following Reply addresses and cites to the Magistrate's Order, along with the opposition provided by Plaintiffs. References to the

Magistrate's Order will be designated by "Order" followed by the applicable page number. References to the Plaintiffs' Opposition will be designated by "Opp" followed by the applicable page number.

## II.   ARGUMENT IN REPLY

**Argument #1:   Roper is Similarly Situated to those Civil Defendants who are Faced with a Simultaneous Criminal Proceeding, and the Need for Relief and the Likelihood of Irreparable Harm to Roper's Constitutional Rights is Identical to Those Cases.**

While courts are not always required to stay civil proceedings where there is a pending, related criminal action, a stay is warranted in certain circumstances. *Walsh Securities, Inc. v. Cristo Property Management, Ltd*., 7 F.Supp.2d 523, 526 (D.N.J. 1998). Courts are afforded this discretion because the denial of a stay could impair a party's Fifth Amendment privilege against self-incrimination, extend criminal discovery beyond the limits set forth in Federal Rule of Criminal Procedure 16(b), expose the defense's theory to the prosecution in advance of trial, or otherwise prejudice the criminal case. See *In re Par Pharmaceutical, Inc*., 133 F.R.D. 12, 13 (S.D.N.Y. 1990)(noting these concerns). Roper contends that in light of the nature of this case, the fact that his alleged wrongdoing is the focal point of the case, and the widespread national media coverage surrounding the matter, a stay is warranted in order to protect Roper's constitutional rights and to prevent irreparable harm to Roper's ability to defend his criminal matter.

Generally speaking, the scope of a stay may encompass all of the proceedings in a civil action, or may be limited to particular parts of them, based on the sound discretion of the court. See *United States v. Mellon Bank,* 545 F.2d 869, 872-73 (3d Cir. 1976) (finding that it was within the power of the district court to stay civil actions completely pending the resolution of related criminal proceedings).

Federal courts have commented that postponement of civil proceedings is desirable to protect the integrity of the separate civil and criminal processes, lest the civil proceedings interfere with the criminal case by "'churning over the same evidentiary material.'" See *Peden v. United States,* 206 Ct. Cl. 329, 512 F.2d 1099, 1103 (1975); *United States v. LaSalle Nat'l Bank,* 437 U.S. 298, 311-12, 98 S. Ct. 2357, 57 L. Ed. 2d 221 (1978) (noting policy interest against broadening the Justice Department's right of criminal discovery and against infringing on the role of the grand jury as the principal tool of criminal accusation).

In those cases where a court has granted a stay of related civil proceedings, it has done so because: (1) there has been substantial overlap between the civil and criminal case, (2) the stage of the criminal proceeding is at or near indictment, (3) the prejudice to the moving party outweighs the burden to the non-movant; and (4) the public interest favors a stay. See, e.g. *United States v. All Articles of Other-Sonic Gneric Ultrasound Transmission Gel,* 2013 U.S. Dist. LEXIS 42909 (D.N.J. Mar. 26, 2013)(entering a stay after examining these factors.) It is Roper's position that he clearly meets all of the foregoing factors that a court weighs in entering a stay.

As noted in Roper's appeal, the fact that Roper was not initially joined in this action is not conclusive of his ability to obtain a stay.  See *Warren v. Geller*, 2013 U.S. Dist. LEXIS 50856, 2013 WL 1455688 (E.D. La. April 9, 2013)(permitting the United States to intervene and obtain a stay of civil proceedings.) What Roper has argued in his appeal is that in light of the unique circumstances of this case, including the national media spotlight - a temporary stay is warranted, because Roper faces nearly identical harm to those civil defendants who have successfully obtained a stay.

The facts and legal theory employed by Plaintiffs in intentionally not naming Roper, coupled with unique threat of harm to Roper, appears to make this a case of first impression. Nonetheless, the relief requested by Roper is not without support. See *U.S. v. Kordel,* 397 U.S. 1, 13, n. 27, 90 S.Ct. 763, 770, n.27 (1970)("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action . . .") In *Kordel,* the United States Supreme Court also suggested several circumstances which might call for the implementation of a stay:

> . . . where the Government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; [or] where the defendant is without counsel **or reasonably fears prejudice from adverse pretrial publicity or other unfair injury; [or under] any other special circumstances that might suggest the unconstitutionality or even the impropriety of this criminal prosecution.**
>
> See *Kordel*, 397 U.S. at 11, 90 S.Ct. at 769 (footnotes omitted)

Several of those *Kordel* examples are present in this case, including the parallel prosecution of the civil and criminal cases involving virtually the same facts and administrative agencies, as well as the fear of prejudice from adverse pretrial publicity.

The negative publicity surrounding Roper is readily apparent, and will only grow in intensity should negative admissions or disclosures be made by the parties in this case. Even the rather benign procedural developments surrounding Roper's appeal have been widely reported by

the national press[1]. A more damaging example, which was 100% false, was the national media report that Roper possessed a "Twitter" account which  contained the statement "It's my road move or get hit!"  in his Twitter profile[2].

This publicity all occurred at the very inception of this lawsuit, *before* widespread discovery between the parties occurred. As this case continues, and as acrimony builds between Plaintiffs and Wal-Mart, Roper will be caught in the middle, and will lack any way of responding and curing the irreparable harm that will occur in his criminal case should damaging information come to light via this civil action.

In her Order, the Magistrate distinguished Roper's case law, finding that he failed to provide specifics on how his interests and concerns applied in this case. (Order, 7, Opp., 6). That position, which the Plaintiffs' have also argued, would require Roper to either reveal the communications with his attorney concerning his criminal defense strategy, or comment on potential facts and allegations that Wal-Mart might admit in this civil case. Roper is not required to waive certain constitutional rights in order to protect others - and the insistence that Roper reveal such details should be rejected by the Court.

In addition to the *Kordel* examples cited above, federal courts have also noted that a stay may be required where an individual pending criminal trial is threatened by the discovery process in a civil proceeding. For instance, in *Afro-Lecon, Inc. v. United States*, 820 F.2d 1198, 1203 (Fed. Cir. 1987), the court noted:

---

[1] See http://www.nydailynews.com/new-york/driver-crashed-tracy-morgan-limo-appeals-suit-article-1.2135826, http://www.nydailynews.com/entertainment/gossip/tracy-morgan-suit-walmart-hold-pending-article-1.2139957, http://www.nj.com/news/index.ssf/2015/03/stop_the_delays_tracy_morgans_lawyers_say.html, http://www.heraldnet.com/article/20150211/ENT/150219993

[2] See http://www.nydailynews.com/entertainment/tracy-morgan-driver-talks-aftermath-accident-article-1.1821642

> The broad scope of civil discovery may present to both the prosecution, and at times the criminal defendant, an irresistible temptation to use that discovery to one's advantage in the criminal case. Such unconstitutional uses may begin with the surreptitious planting of criminal investigators in civil depositions, as in the case at bar, and end with passive abuses, such as when the civil party, who asserts fifth amendment rights, is compelled to refuse to answer questions individually, revealing his weak points to the criminal prosecutor. This point-by-point review of the civil case may lead to a "link in the chain of evidence" that unconstitutionally contributes to the defendant's conviction.

These same threats to Roper are present in this case, yet by virtue of the fact that Roper is not a named defendant, he has thus far been unable to obtain what, under ordinary circumstances, would be a clear entitlement to relief. Since Roper is similarly situated to those civil defendants who have obtained a stay, and in light of the *Kordel* examples and wide authority this Court possesses to enter a stay, Roper urges this Court grant his appeal and enter a temporary stay of these proceedings[3].

**Argument #2:   The Plaintiffs Should Not Be Afforded the Ability to Circumvent Established Precedent by Not Joining the "Main Actor" in this Civil Action.**

In every single filing the Plaintiffs have made concerning Roper's request to intervene and stay the case, the Plaintiffs have incessantly argued the fact that Roper is not named in this

---

[3] As an aside, while not addressed by the Magistrate specifically, in addition to the impact that a failure to stay will have on Roper, a concurrent civil and criminal prosecution will also place a unreasonable burden on the administrative agencies that will be testifying, responding to subpoenas, and otherwise involved in both actions.

civil action. (Opp. 6, 7, 8 and 10) The Plaintiffs' argue that fact alone should be the "end all" of the Court's analysis of the issue.

Had Roper been named, which would be typical and expected in virtually every other personal injury action, since his conduct forms the basis for Plaintiffs' alleged injuries and claim for damages, his entitlement to a temporary stay would be overwhelming. The Plaintiffs, who were undoubtedly aware of this body of law governing a stay of civil proceedings, chose intentionally not to name Roper in this action, despite the fact that his conduct is the focal point for Plaintiffs' claims for relief. While the Plaintiffs argue that their claims are not directed at Roper (see Opp 11-12), the fact is that the Plaintiffs must prove the validity of the allegations made concerning Roper as a precondition to any recovery against Wal-Mart. While liability against Wal-Mart may be the Plaintiffs' end-game, the reality is they will have to prove and demonstrate a substantial amount of intentional and negligent conduct on the part of Roper in order to get there. Like the Plaintiffs, the Magistrate also erred in failing to note that it is Roper's conduct that forms the heart of the Plaintiffs' complaint against Wal-Mart. (See Order, 10)

It is clear that Plaintiffs' strategy in not naming Roper in this civil action was to avoid a stay and keep this civil action moving forward; one need only look at the crusade the Plaintiffs have embarked upon to force Wal-Mart to answer the complaint, as well as Plaintiffs' hollow assertion of prejudice, based on the fact that this action has been pending for eight whole months without relief.

Additionally, the Magistrate erred in finding that the gravamen of the allegations in the Complaint is that the Defendants routinely and systematically ignored federal regulations (Order, 10 and Opp., 11-12) was in error. The Plaintiffs avenue for relief is proving negligence on the part of Roper on the night in question. Proving that Wal-Mart "routinely and systematically

ignored federal regulations," without implicating Roper in those events, will not entitle Plaintiffs to any relief in this case. There is no independent cause of action pled for violating any specific motor carrier regulations, and presumably, such regulations would not even create an independent cause of action, absent some resulting injury. It should be noted that the National Transportation Safety Board's preliminary report found that Wal-Mart <u>did not</u> violate any specific motor carrier regulations.

Simply put, if Wal-Mart violated some motor carrier regulation at some other location on some other date, the Plaintiffs have asserted no basis for recovery against Wal-Mart. It is only through Roper that any such damages would be recoverable. Roper is unquestionably the centerpiece of this action, despite the fact he is not named.

**Argument #3:   The General Magistrate's Findings That Wal-Mart and Roper's Interests Are Aligned Was  Clearly Erroneous.**

Throughout the Plaintiffs' opposition, the Plaintiffs argue that the Magistrate did not commit any clear error, because Roper does not have a "significantly protectable interest" in the litigation. (Opp.,10) Plaintiffs also asserts that "Wal-Mart's interests are aligned with Mr. Roper's." Id. The Plaintiffs apparently believe that to be so, based solely on the fact that Wal-Mart would be vicariously liable for Mr. Roper's alleged negligence. Id.

There is no basis for the Plaintiffs' assertion that Wal-Mart and Roper's interests are aligned. Wal-Mart faces potential massive liability, including possible punitive damages, based on Plaintiffs' allegations that Wal-Mart routinely ignores motor carrier regulations. Should Plaintiffs' prove the initial liability of Roper, they will undoubtedly attempt to prove that Wal-Mart's conduct was systemic, and applied to all drivers, not just Roper. The implications for Wal-Mart, a national corporation that employs thousands of drivers, would be far reaching. With

that in mind, for many issues that arise in this case, it will be in Wal-Mart's best interest to paint Roper as a lone "bad actor," whose conduct does not represent Wal-Mart policy or other Wal-Mart drivers.

In other words, not only will Wal-Mart not protect Roper's interests in this case, but there is a virtual certainty that Wal-Mart will admit and disclose information that is damaging to Roper, if it might mitigate any punitive damages or widespread liability on the part of Wal-Mart concerning its corporate policies and practices.

Contrary to the Magistrate's opinion, it is a fact that Roper and Wal-Mart's interests are not aligned in this case. As proof, this Court need only take judicial notice of the fact that Wal-Mart has not taken any position on Roper's request to intervene and obtain a stay. As a named party, Wal-Mart could have, but chose not to ask for any such relief.

**The Harm to Roper Greatly Outweighs and Potential Prejudice to the Plaintiffs, Should a Stay Be Entered.**

In Plaintiffs' opposition, Plaintiffs argue that they would be prejudiced by a temporary stay of these proceedings, which would violate their right to a "just, speed and inexpensive determination of their action.[4]" (Opp., 11) The Plaintiffs have yet to articulate any specific prejudice they would suffer should a temporary stay be entered, and any potential prejudice can be alleviated by entering a 180 day stay of these proceedings, and then revisiting the propriety of extending such a stay.

The Plaintiffs will suffer no prejudice should a 180 day stay be entered in this case. While the Plaintiffs argue about their right  to a speedy determination (Opp, 11), the Court

---

[4] It is noteworthy that the case the Plaintiffs cite for that argument, *Donald M. Durkin Contr., Inc. v. City of Newark*, 2006 U.S. Dist. LEXIS 85372, 2006 WL 3404819, *3 (D. Del. Nov. 27, 2006) discussed the "public's" right to a just, speedy and inexpensive determination of "every action." The court <u>did not </u>state that every civil litigant must be afforded that right, without exception.

should be aware of the fact that the Plaintiffs were in such a rush to the courthouse, they filed this civil action before the NTSB had even completed its preliminary investigation.

Moreover, and noted in Roper's appeal, the fact that the Plaintiffs are still treating is a relevant issue on this topic. While Plaintiffs argue their right to a quick resolution of this case would be impeded, that argument ignores the fact that the Plaintiffs are still treating, and their injuries and recoverable damages have not yet even been fully realized. The Magistrate's specific finding that "allowing intervention would cause a significant delay, to the prejudice of the parties," was in error (Order, 11), as Roper's criminal matter is on the eve of being presented to the grand jury. Plaintiff's support of that finding should be rejected by the Court.

Further, the Magistrate's finding that Roper can simply "communicate his concerns" to address any future threat of harm will not offer adequate protection to Roper. Roper lacks an ability to comment specifically about allegations, admissions or disclosures that may be made in this case, without potentially waiving his Fifth Amendment rights. Nor can Roper simply claim his Fifth Amendment privilege in response to any civil discovery directed toward him. In the civil context, the parties and court can comment on an individual's decision to exercise his Fifth Amendment privilege. See, e.g. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)("the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.") Any such commentary will create a media firestorm against Roper, before he ever sets foot in a criminal courtroom.

The prejudice that would befall Roper in the event Wal-Mart discloses or admits damaging information in this case about Roper would be irreparable. Given the widespread media coverage of this case, neither this Court, nor a Middlesex County criminal court, would have the ability to remedy such irreparable harm.

**Argument #4:   By Permitting Plaintiffs to Pursue Wal-Mart and Engage in Civil Litigation Concerning Roper's Conduct, this Court Will Unintentionally Provide Civil Plaintiffs with a Tool to Avoid a Stay - and to Abuse the Civil Discovery Process.**

As noted above, numerous federal courts have noted that one reason why a civil stay is often necessary is to protect a criminal defendant from abuse via the civil discovery process, which is much broader than discovery under the criminal rules of procedure. See *Afro-Lecon, Inc.,* 820 F.2d at 1203.

In this case, the denial of a stay, based on the mere fact that Roper was not a named defendant, would have far reaching negative consequences. Enterprising plaintiff's attorneys would be provided with a significant tool to avoid a stay of their civil case where there are related criminal proceedings, by simply not initially naming the alleged at-fault employee in the civil action. This would permit expansive civil discovery into both the corporate defendant and the individual criminal defendant, without any concerns about a stay of the civil proceedings. With at least several years before a statute of limitations expired, a civil plaintiff could engage in this discovery abuse, and later amend their complaint and join the criminal defendant anyway, after conclusion of the criminal proceeding.

As noted previously, courts have long recognized the potential abuse of the civil discovery process while a parallel criminal matter is ongoing. Roper urges this Court to not condone such tactics, by permitting Plaintiffs to avoid a stay based solely on their own voluntary decision to not name the "main actor" in the related civil action.

Finally, a stay is proper in this case, as one need only envision the procedural and logistical chaos that would visit the administrative agencies involved in this action, who will be forced to shuttle between one courtroom and the next during parallel civil and criminal proceedings. This district's interests in ensuring the efficient administration of justice - for all

parties - dictates that this case be placed on temporary hold, until the conclusion of Roper's pending criminal proceedings.

<u>**CONCLUSION**</u>

Roper respectfully requests that this Honorable Court grant the Motion to Intervene and enter an Order issuing a stay of all further proceedings pending outcome of the criminal charges against Roper, or alternatively for at least the next 180 days, and that the Court grant such further relief that this Court deems just and proper.

Respectfully submitted,

Dated: March 9, 2015

/S/ David Jay Glassman, Esquire
David Jay Glassman, Esquire
Law Offices of David Jay Glassman, Esq.
Attorney for Kevin Roper
N.J. Attorney I.D. 021461980
Five Greentree Centre, Suite 104
525 Route 73 North
Marlton, NJ 08053